1
2
3
4
5
6
7

**United States District Court**
For the Northern District of California

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  LYMAN LYNN SIMS, SR.,                     No. C-09-1348 TEH (PR)

12              Petitioner,              ORDER DENYING PETITION FOR WRIT
                                         OF HABEAS CORPUS AND DENYING
13        v.                             CERTIFICATE OF APPEALABILITY

14  LARRY SMALL, Warden,

15              Respondent.

16  _____/

17

18        Petitioner Lyman Lynn Sims, Sr., a state prisoner

19  incarcerated at California State Prison in Calipatria, California,

20  has filed a pro se writ of habeas corpus under 28 U.S.C. § 2254

21  challenging a criminal judgement from San Mateo County Superior

22  Court, which, for the reasons that follow, the Court denies.

23                              I.

24        In May 2006, petitioner was sentenced to forty-five years

25  to life, plus thirty years in state prison following his various

26  convictions which include attempted murder of a peace officer,

27  assault on a peace officer with a semi-automatic firearm, convicted

28  felon in possession of a loaded firearm in a public place, convicted

felon in possession of a firearm, and multiple counts of second degree robbery and assault with a semi-automatic weapon.  Doc. #7, Exh. G, Vol. 13 at 1359-63.  On November 26, 2007, the California Court of Appeal affirmed the judgment.  Doc. #7, Exh. A.  On February 13, 2008 the California Supreme Court denied his petition for review.  Doc. #7, Exh. D.

On March 27, 2009, petitioner filed the instant habeas petition raising the following claim:  a denial of his right to due process because of jury instruction error.  Doc. #1.  On May 7, 2009, the Court found that petitioner stated a cognizable claim for relief and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Doc. #6.  Respondent has filed an Answer and petitioner has filed a Traverse.  Doc. ##11 & 13.

## II.

The California Court of Appeal provided the following factual and procedural background of the case:

> Two men robbed a South San Francisco Bank of America.  One of the men, later identified as McLane, jumped over the counter and said, "this is a takeover."  The other man, later identified as Sims, told the tellers not to move and pointed a rifle at them while McLane took money out of the cash drawers and put it in a bag.  The cash included tracking devices that automatically activated a silent alarm when they were removed from the cash drawers. [n.3]
>
> [n.3] As the robbers fled, one of the tellers saw Sims bend over to pick up a dropped bullet.
>
> Sheriff's Deputy William Fogarty learned of the bank robbery over his radio, and used an electronic tracking system to identify an electronic signal from a Jeep Cherokee carrying four people.  Deputy Fogarty followed the Jeep until it slowed down in a residential area and Sims got out holding an assault rifle.  Deputy Fogarty jumped out and ran to the back of his patrol car.  He heard two shots go over his head.  He saw Sims fire a third shot, which passed within inches of Deputy Fogarty's right ear.  Deputy Fogarty returned fire

**United States District Court**
For the Northern District of California

2

several times, but did not hit Sims.

Sims pointed the rifle at Deputy Fogarty again, but it seemed to jam and Sims fled on foot. [n.4]  Deputy Fogarty ordered the remaining occupants to exit the Jeep.  As McLane moved in the backseat of the car, a guitar case fell out.  Deputy Fogarty told McLane, "let me see your hands," but McLane did not comply.  The deputy saw something black in McLane's hands that he thought was a gun and shot McLane in the thigh.

    [n.4] Deputy Fogarty later learned that Sims had fired at him a fourth time, but the rifle had misfired.

Backup officers arrived at the scene and found Sims hiding in bushes behind a nearby housing project.  When he was found Sims had a large wad of currency wrapped around electronic tracking devices, a 7.62 x 39 caliber live round which appeared to have been misfired, and a pair of gloves in his pockets.  At the time Sims was arrested, and during the trial, Deputy Fogarty positively identified Sims as the man who shot at him.

When he was captured, Sims did not have a rifle.  Shortly thereafter, police found an SKS semi-automatic rifle in a nearby homeless camp.  The SKS uses only 7.62 x 39 caliber cartridges.  When they searched the Jeep, officers found $2,000 "shoved down in the left rear seat . . . where McLane was sitting,' along with a marked bill.  A beige floppy hat and green shirt were also found in the car, and the surveillance video from the bank showed Sims wearing similar clothing during the robbery.  When McLane was searched he had four $20 bills in his pocket, including three marked bills from the bank.

No spent shell casings were initially recovered from the area where the Jeep had stopped, but a 7.62 x 39 caliber live round with a dented primer that indicated that the shell had misfired was found on the sidewalk.  Several days later, police found evidence of bullet damage to a nearby garage door and a car parked in the area.  In a storm drain, officers later found a bullet casing that an expert concluded was fired from Sims's rifle.  A neighbor also testified that on the night of the robbery, he heard a shot that sounded like an AK 47 rifle, and a shot that sounded like a small gun fire.  Another neighbor testified that she heard about four gunshots, and saw a man run down the street with a "very large" gun.

Sims was charged with attempted murder of a peace officer, assault on a peace officer with a semi-automatic firearm, being a felon in possession of a loaded firearm in a public place, and being a felon in possession of a firearm. Enhancements were also alleged for his personal use and

3

United States District Court
For the Northern District of California

intentional discharge of a firearm.   Sims and McLane were
jointly charged with multiple counts of second degree robbery
and assault with a semi-automatic weapon.   Enhancements were
alleged for Sims's personal and intentional discharge of a
firearm, Sims's personal use of a firearm, and McLane's
knowledge that a principal was personally armed with a
firearm.   It was also alleged that each defendant had prior
convictions and prior prison terms.

Sims and McLane were tried jointly.   Sims called four
witnesses who each testified they heard a different number of
shots fired (two, three, or four).   Counsel argued that the
only evidence of shots fired were those by Deputy Fogarty,
and not Sims; that Sims did not assault or attempt to kill
Deputy Fogarty.

McLane testified in his own defense that he went with Sims to
San Francisco to get drugs.   Sims's wife and her friend
picked McLane and Sims up in a Jeep Cherokee, and took them
to an apartment complex near the Bank of America.   McLane
walked with Sims toward the bank and thought Sims was going
to withdraw some money.   Sims gave McLane a backpack and
gloves and told him to "get the money."   Sims gestured to a
guitar case he had been carrying since McLane met him earlier
that day and McLane though there "could be a weapon or gun in
there."   McLane said he followed Sims's orders because he was
scared.

McLane admitted prior felony convictions, including false
impersonation and preparation of false evidence.   He claimed
he did not know Sims had a gun until just before the two
entered the bank, and he was surprised to see it was an
automatic rifle.   Based upon his testimony, McLane's lawyer
argued he should be convicted, at most, of three robberies,
and there was no evidence that assault with a semi-automatic
weapon was a natural and probable consequence of his crimes.

. . .

Both defendants were found guilty as charged, except for not
guilty verdicts on four of the nine robbery counts.   The
court found true the enhancement allegations based on
defendants' prior convictions and prior prison terms.   Sims
was sentenced to a term of 45 years to life, plus 30 years.
McLane was sentenced to 18 years and 4 months in prison.

Doc. #7, Exh. A at 2–5.

### III.

Under the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may

4

United States District Court
For the Northern District of California

not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear

5

and convincing evidence.  28 U.S.C. § 2254(e)(1).

        In four decisions last year alone, the United States Supreme Court reaffirmed the heightened level of deference a federal habeas court must give to state court decisions.  See Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Premo v. Moore, 131 S. Ct. 733, 739-40 (2011); Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam); Cullen v. Pinholster, 131 S. Ct. 1388, 1398-1400 (2011).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  Felkner, 131 S. Ct. at 1307 (citation omitted).

        When applying these standards, the federal court should review the "last reasoned decision" by the state courts.  Avila v. Galaza, 297 F.3d 911, 918 n.6 (9th Cir. 2002) (treating state court referee's report as the last reasoned state court decision where report was summarily adopted by the court of appeal and petition for review to California Supreme Court was denied without comment). Because the California Supreme Court summarily denied relief on petitioner's claim of jury instruction error, this Court looks to the California Court of Appeal's November 26, 2007 written decision denying petitioner's appeal when considering his claim.

        With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses petitioner's claim.

                                IV.

        Petitioner seeks habeas relief under 28 U.S.C. § 2254

based on an alleged denial of his right to due process when the trial court used CALCRIM Nos. 220 and 222 to describe the state's burden of proof without also instructing that a "lack of evidence that might reasonably be expected to be present could be considered by the jury in determining [whether] the prosecution had met its burden of proof." Doc. #13 at 6. Petitioner contends that these jury instructions limited the jurors to considering only the evidence presented at trial and thereby precluded them from considering any "evidentiary gaps" or lack of evidence in determining whether petitioner was guilty beyond a reasonable doubt. Doc. #1 at 7-8.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction "by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (internal quotations and citation omitted). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)). "[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." Victor v. Nebraska, 511 U.S. 1, 6 (1994) (emphasis in original) (citing Estelle v. McGuire, 502 U.S. at 72 and n.4). Even if the instruction is erroneous, habeas relief would be available only if the error had a "substantial and injurious effect or influence in

United States District Court
For the Northern District of California

1  determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S.
2  619, 637 (1993) (internal quotations and citations omitted).

3      However, when an instruction relieves the prosecution of
4  its obligation to prove the defendant's guilt beyond a reasonable
5  doubt, the instructional error is structural and not subject to
6  harmless error review.  See Byrd v. Lewis, 566 F.3d 855, 862 (9th
7  Cir. 2009)(citing Sullivan v. Louisiana, 508 U.S. 275, 281 (1993)).
8  The Due Process Clause of the Fourteenth Amendment protects the
9  accused in a criminal case against conviction "except upon proof
10  beyond a reasonable doubt of every fact necessary to constitute the
11  crime with which he is charged."  In re Winship, 397 U.S. 358, 364
12  (1970).  The Supreme Court has held that "so long as the court
13  instructs the jury on the necessity that the defendant's guilt be
14  proven beyond a reasonable doubt, the Constitution does not require
15  that any particular form of words be used in advising the jury of
16  the government's burden of proof.  Rather, taken as a whole, the
17  instructions must correctly convey the concept of reasonable doubt
18  to the jury."  Victor, 511 U.S. at 5 (internal citations and
19  quotations omitted).

20      In addressing petitioner's claim that the jury was not
21  properly instructed on the prosecution's burden of proof, the
22  appellate court found no due process violation, stating:

23          Sims claims the trial court erroneously instructed the
24  jury with CALCRIM Nos. 220 and 222.  Instruction No. 220 is
   the standard instruction on the prosecution's burden to prove
25  its case beyond a reasonable doubt.  Instruction No. 222 is a
   general instruction describing what is evidence.  The part of
26  Instruction No. 220 that Sims challenges says that "[i]n
   deciding whether the People have proved their case beyond a
27  reasonable doubt, you must impartially compare and consider
   all the evidence that was received throughout the entire

28                          8

United States District Court
For the Northern District of California

trial." The part of Instruction No. 222 that he challenges says "[y]ou must decide what the facts are in this case ... but use only the evidence that was presented in this courtroom." Sims contends that because these instructions limit the jury to considering "evidence which was affirmatively presented at trial, the court precluded the jury from considering the absence of evidence which logically would have existed had the prosecution's theory of the case been correct." We cannot agree that anything in these instructions could reasonably lead a jury to overlook the absence of evidence on material facts when considering Sims's guilt or innocence.

When we review a challenge to the jury instructions, we consider the entire charge, not just parts of an instruction or a particular instruction. (People v. Castillo (1997) 16 Cal.4th 1009, 1016.) Defendant must show a reasonable likelihood that the jury misunderstood the instructions as a whole. (People v. Cain (1995) 10 Cal.4th 1, 36-37; People v. Anderson (2007) 152 Cal.App.4th 919, 938.) Sims argues that the challenged parts of the instructions so limited the jury's consideration of evidence to the record that jurors were not free to consider the importance of other unproven facts in determining his guilt. Essentially he argues that the charge of attempted murder and assault on a peace officer with a semi-automatic weapon were unproven because the jury was not allowed to consider facts that are not in the record in assessing whether the prosecution met its burden of proof.

Sims says there is no evidence that tied the bullet found in the storm drain to Sims or to the incident involving Deputy Fogarty. He says the bullet "could have been fired earlier by a previous owner of the rifle, or it could have rolled into the drain after falling from the open guitar case or Sims'[s] pocket as he made his hurried escape," and that "[t]here was no evidence tying the misfired cartridges to Sims'[s] particular rifle." Nothing in the instructions precluded the jury from considering an argument based upon these claimed evidentiary gaps, and Sims's counsel argued these omissions were critical failures of proof that warranted an acquittal. [n.5] The problem is the jury did not agree.

[n.5 The same is true of Sims's contentions that "[t]here was no evidence that any witness other than [Deputy] Fogarty heard the seven or eight shots that would have had to have been fired under the prosecution's theory of the case," "no evidence on bullet trajectory[,] and no testing for trace bullet material around the dent in the car or on the brick of the house."]

The jury was thoroughly instructed on the People's duty to prove each element of the charged crimes beyond a

9

reasonable doubt, and Sims's counsel so reminded the jury when he concluded his argument that the prosecution failed to prove that Sims fired at Deputy Fogarty.  The instructions designed to prevent the jury from improperly considering outside sources as proof of facts did not preclude the jury from considering and evaluating Sims's arguments regarding the prosecution's case and the prosecution's failure to prove the case beyond a reasonable doubt.  "[T]he instructions clearly conveyed to the jury the notion that the People had the burden of proving [defendant's] guilt beyond a reasonable doubt and that the jury was required to determine whether the People had met their burden of proving all of the facts essential to establishing his guilt."  (<u>People v. Westbrooks</u> (2007) 151 Cal.App.4th 1500, 1509.)

. . . . In this case, the court "did not tell the jury that reasonable doubt must arise from the evidence presented at trial, and, given the court's other instructions, it would not have been reasonable for the jury to interpret CALCRIM No. 220 [and CALCRIM No. 222] as stating that the jury was precluded from considering any perceived lack of evidence in determining [defendant's] guilt." (<u>People v. Westbrooks</u>, <u>supra</u>, 151 Cal.App.4th at p. 1510.)

Doc. #7, Exh. A at 5-7.

At petitioner's trial, the jury was instructed pursuant to CALCRIM NO. 220 as follows:

The fact that criminal charges have been filed against the defendants is not evidence that the charges are true.  You must not be biased against the defendants just because they have been arrested, charged with crimes or brought to trial. A defendant in a criminal case is presumed to be innocent, this presumption requires that the People prove each element of a crime and allegation beyond a reasonable doubt.

Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt, unless I specifically tell you otherwise.

Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt, because everything in life is open to some possible or imaginary doubt.

In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the trial. . .

Unless the evidence proves the defendants guilty beyond a reasonable doubt, they are entitled to an acquittal and you

10

United States District Court

For the Northern District of California

1    must find them not guilty.

2  Doc. #7, Exh. G, Vol. 8 at 1211-12.   The jury was also instructed

3  pursuant to CALCRIM No. 222 as follows:

4         You must decide what the facts are in this case, but use only
       the evidence that was presented in this courtroom.   Evidence
5       is the sworn testimony of the witnesses, the exhibits
       admitted into evidence and anything else I told you to
6       consider as evidence.

7  Doc. #7, Exh. G, Vol. 8 at 1179-80.

8         Petitioner's contention that CALCRIM Nos. 220 and 222's

9  charge to consider only the evidence at trial is unconstitutional is

10  without merit.   It is well established that, in assessing whether a

11  charge has been proven beyond a reasonable doubt, the jury may

12  consider only the evidence presented at trial (as opposed to

13  evidence that exists but is not presented at trial).   See Victor,

14  511 U.S. at 15-16; see, e.g., Leavitt v. Arave, 383 F.3d 809, 818

15  (9th Cir. 2004)(finding accurate jury instructions on burden of

16  proof that required jury to base its decision only on evidence

17  adduced at trial).

18         Moreover, neither CALCRIM No. 220 nor CALCRIM No. 222

19  preclude the jury from considering any alleged lack of evidence.

20  Although CALCRIM No. 220 instructs the jury that it may only

21  consider evidence admitted at trial, it further instructs the jury

22  that "[u]nless the evidence proves the defendants guilty beyond a

23  reasonable doubt, they are entitled to an acquittal and you must

24  find them not guilty."  Doc. #7, Exh. G, Vol. 8 at 1212.   Under

25  CALCRIM No. 220, lack of sufficient evidence to prove defendant

26  guilty beyond a reasonable doubt would entitle the defendant to an

27  acquittal.   Nor does CALCRIM No. 222 preclude the jury from

28
                                   11

considering a lack of evidence in determining whether petitioner had been proven guilty beyond a reasonable doubt.  Rather, CALCRIM No. 222 merely restricts the range of evidence that may be considered to the evidence which was presented in the courtroom.

Read in conjunction with the other instructions given, the California Court of Appeal reasonably found that CALCRIM Nos. 220 and 222 properly described the prosecution's burden of proof, namely that the state bore the burden of proving petitioner's guilt beyond a reasonable doubt, that the jury could only consider evidence presented in the courtroom, and that if there were insufficient evidence to prove petitioner guilty beyond a reasonable doubt (e.g. a lack of evidence), he was entitled to an acquittal.

Accordingly, the Court finds that the California courts' rejection of petitioner's claim of instructional error was neither contrary to, nor involved an unreasonable application of, clearly established Supreme Court law.

V.

Petitioner claims that the evidence presented precluded a rational fact finder from making a reasonable determination that the petitioner was guilty of the aforementioned charges beyond a reasonable doubt.

A federal court collaterally reviewing a state court conviction does not determine if the evidence at trial established guilt beyond a reasonable doubt; instead, the court's role is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

12

United States District Court
For the Northern District of California

doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in
original and internal citation omitted).  Thus, a petitioner's writ
may be granted only if "no rational trier of fact could have found
proof of guilt beyond a reasonable doubt." <u>Id.</u> at 324.  The
reviewing court must also presume that the trier of fact resolved
any conflicting inferences "in favor of the prosecution, and must
deter to that resolution." <u>Id.</u> at 326.  Circumstantial evidence and
inferences drawn from that evidence may be sufficient to sustain a
conviction. <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995).
Pursuant to AEDPA, the court's inquiry is limited to whether the
state court's decision was "an unreasonable application of <u>Jackson</u>
and <u>Winship</u>" to the facts of the case. <u>Juan H. v. Allen</u>, 408 F.3d
1262, 1275 (9th Cir. 2005) (internal quotations omitted).

     After reviewing the record and according it the "highly
deferential" review required by AEDPA, <u>Felkner</u>, 131 S. Ct. at 1307,
this court cannot say that no rational trier of fact could find that
petitioner was guilty of the aforementioned charges.  Deputy Fogarty
positively identified petitioner at trial as the "man who fired the
shot." Doc. #7, Exh. G, Vol. 4 at 376.  He also identified
petitioner during an in-field identification procedure. <u>Id.</u> at 413-
14 ("It was absolutely the same person.").  Deputy Fogarty explained
that he was absolutely sure as to petitioner's identity because,
based on his training and experience, he knew to focus in on what
petitioner looked like and what he was wearing in case the
petitioner was later apprehended. <u>Id.</u> at 415.  Deputy Fogarty
testified that he saw petitioner exit the vehicle with an assault
rifle in his hand.  As Deputy Fogarty ran to position himself behind

his police car, two shots were fired at Deputy Fogarty.  Id. at 375.
When Deputy Fogarty got behind his vehicle, he turned towards
petitioner and saw petitioner pull the trigger and heard the bullet
go by his right ear.  Id. at 403-04.  Petitioner then turned and ran
in the opposite direction.  Petitioner then stopped and turned back
to face Deputy Fogarty.  At this time, petitioner raised his rifle
and aimed at Deputy Fogarty and "did something around the trigger
area."  Deputy Fogarty assumed that petitioner was trying to clear a
jam in the gun and shoot again; Deputy Fogarty he later learned that
the gun had misfired  Id. at 404-405.

        Furthermore, evidence collected at the scene corroborated
Deputy Fogarty's testimony.  A live round whose caliber matched
petitioner's rifle was found on the sidewalk near where Deputy
Fogarty had observed petitioner firing.  Doc. #7, Exh. G, Vol. 6 at
726-27, 730.  The round had a dented primer, indicating it had been
struck by the firing pin, but had not discharged since the bullet
was still a part of it.  Id. at 726.  There was also evidence of a
bullet matching petitioner's rifle lodged in the window frame of a
house near the shooting.  Id. at 731.  Another bullet matching
petitioner's gun was also found in petitioner's pocket when he was
apprehended.  Id. at 741.  A casing matching petitioner's gun was
found in a storm drain at the scene of the crime.  Id.

        Viewing this evidence in the light most favorable to the
prosecution, it was reasonable for the jury to find petitioner
guilty of the aforementioned charges.  See, e.g., Jackson, 443 U.S.
at 324.  Accordingly, the Court finds that the California courts'
rejection of petitioner's claim of instructional error did not

14

result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

                                VI.

        For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

        Further, a Certificate of Appealability is DENIED. <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

        The Clerk is directed to enter Judgment in favor of respondent and against petitioner, terminate any pending motions as moot and close the file.

        IT IS SO ORDERED.

DATED     _03/26/2012_          _____
                                THELTON E. HENDERSON
                                United States District Judge

G:\PRO-SE\TEH\HC.09\Sims-09-1348-deny habeas.wpd

15